IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**NNN 400 CAPITOL CENTER 16, LLC,** *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-12728 (KG)<br>(Joint Administration Pending)<br><br>**Hearing Date: Jan. 20, 2017 @ 12:00 p.m. (ET)**<br>**Objection Deadline: Jan. 6, 2017 @ 4:00 p.m. (ET)** |

**APPLICATION FOR AUTHORITY TO EMPLOY
RUBIN AND RUBIN, P.A.,** *NUNC PRO TUNC* **TO THE PETITION DATE,
AS SPECIAL COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through undersigned counsel, pursuant to, among other things, section 327(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), respectfully file this *Application for Authority to Employ Rubin and Rubin, P.A., Nunc Pro Tunc to the Petition Date, as Special Counsel for Debtors and Debtors-in-Possession* (the "Application"), and respectfully request that the Court enter an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing them to employ and retain Rubin and Rubin, P.A. ("Rubin and Rubin") as special

---

[1] The debtors in these cases are: NNN 400 Capitol Center 2, LLC, Case No. 16-12741 (KG); NNN 400 Capitol Center 3, LLC, Case No. 16-12750 (KG); NNN 400 Capitol Center 4, LLC, Case No. 16-12752 (KG); NNN 400 Capitol Center 5, LLC, Case No. 16-12753 (KG); NNN 400 Capitol Center 6, LLC, Case No. 16-12754 (KG); NNN 400 Capitol Center 9, LLC, Case No. 16-12755 (KG); NNN 400 Capitol Center 10, LLC, Case No. 16-12730 (KG); NNN 400 Capitol Center 11, LLC, Case No. 16-12731 (KG); NNN 400 Capitol Center 12, LLC, Case No. 16-12732 (KG); NNN 400 Capitol Center 13, LLC, Case No. 16-12733 (KG); NNN 400 Capitol Center 14, LLC, Case No. 16-12735 (KG); NNN 400 Capitol Center 15, LLC, Case No. 16-12736 (KG); NNN 400 Capitol Center 16, LLC, Case No. 16-12728 (KG); NNN 400 Capitol Center 17, LLC, Case No. 16-12737 (KG); NNN 400 Capitol Center 18, LLC, Case No. 16-12738 (KG); NNN 400 Capitol Center 19, LLC, Case No. 16-12739 (KG); NNN 400 Capitol Center 20, LLC, Case No. 16-12742 (KG); NNN 400 Capitol Center 21, LLC, Case No. 16-12743 (KG); NNN 400 Capitol Center 22, LLC, Case No. 16-12744 (KG); NNN 400 Capitol Center 24, LLC, Case No. 16-12746 (KG); NNN 400 Capitol Center 26, LLC, Case No. 16-12747 (KG); NNN 400 Capitol Center 27, LLC, Case No. 16-12748 (KG); NNN 400 Capitol Center 28, LLC, Case No. 16-12749 (KG); and NNN 400 Capitol Center 32, LLC, Case No. 16-12751 (KG).

counsel, *nunc pro tunc* to the Petition Date (as defined below).  In support of the application (the "Application"), the Debtors submit the *Verified Statement Pursuant to Bankruptcy Rule 2014(a) in Support of the Debtors' Application for Authority to Employ Rubin and Rubin, P.A., Nunc Pro Tunc to the Petition Date, as Special Counsel for Debtors and Debtors-in-Possession* (the "Verified Statement"), attached hereto as **Exhibit B**.  In further support of the Application, the Debtors respectfully state as follows:

## Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these bankruptcy cases and the Application pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157.

2. Pursuant to rule 9013-1(f) of the Local Rules, the Debtors hereby expressly confirm their consent to the entry of a final order by this Court in connection with this Application if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

3. The relief sought by this Application is based upon sections 327(e), 328, 330 and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and has been filed in accordance with Rule 2014-1 of the Local Rules.

**Factual Background**

4. On December 9, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

5. The Debtors are continuing in possession of their property and the management of their businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. No statutorily authorized creditors' committee has been appointed in these cases by the United States Trustee.

**The Debtors and Their Business Operations**

7. In support of this Application, the Debtors incorporate herein and rely on the *Declaration of Lori McGhee in Support of Debtors' Chapter 11 Cases and First Day Motions* (the "Declaration"), filed concurrently herewith, which provides a detailed summary of the Debtors and their business operations.[2]

8. Each of the Debtors is a limited liability company. Each Debtor is owned by an individual or entity that made an independent investment in the Property (as defined below) in connection with an Internal Revenue Code Section 1031 tax deferred exchange offering (a "1031 Exchange").[3] The investors and the TICs (as defined below) are not affiliated with, nor are they partners of, one another. The TIC structure has been developed to facilitate investments in real estate in connection with 1031 Exchange transactions.

9. Each Debtor acquired an undivided tenant-in-common ("TIC") interest in the Regions Center, an approximately 547,000 square foot office building located in Little Rock,

---

[2] Capitalized terms not defined herein shall have those meanings prescribed in the Declaration.
[3] A section 1031 exchange is a transaction authorized by Section 1031 of the Internal Revenue Code that permits deferral of gains from the sale of certain real property when the proceeds are re-invested in other real property in a manner that complies with Section 1031.

Arkansas (the "Property"). The Property is occupied by multiple tenants under various commercial office leases.

10.     Each of the Debtors is party to a Tenants-in-Common Agreement (the "TIC Agreement") that, *inter alia*: (1) provides for the appointment of an asset manager; (2) establishes the parties' voting rights and transfer rights; and (3) outlines the allocation of income and expenses. Likewise, each of the Debtors is a party to a Property and Asset Management Agreement with FGG, Inc. d/b/a First Guardian Group (the "Asset Manager"), providing for the management, leasing, operating and maintaining of the Property (the "Management Agreement"). Under the terms of the Management Agreement, the day to day operations of the Property are performed by Moses Tucker Real Estate (the "Property Manager").

11.     The Property is encumbered by a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated August 18, 2006, and related documents and instruments (the "Mortgage"). The Mortgage secures the obligations of the TIC investors under a promissory note related to a loan (the "Loan") dated August 18, 2006 in the original principal amount of $32,000,000.00 (the "Promissory Note," and together with the Mortgage and related documents, the "Loan Documents"). Whether as an original borrower under the Promissory Note or pursuant to subsequent assignment and assumption agreements, each of the Debtors is a borrower under the Promissory Note, and each of the Debtors is liable under the Loan Documents. In total, there are thirty-two (32) separate TIC investors that hold an ownership interest in the Property and are obligated under the Loan Documents. The percentage of ownership each TIC holds varies and ranges from 0.90% to 9.25%. As of the filing of this Application, twenty-four (24) of the thirty-two (32) TICs have filed petitions for bankruptcy.[4]

---

[4]     Each of the non-filing TICs is a borrower under the Promissory Note and is liable under the Loan Documents.

12. The current lender under the Loan Documents is Wells Fargo Bank, N.A., as Trustee for the Registered Holders of COMM 2006-C8 Commercial Mortgage Pass-Through Certificates (the "Lender"). The maturity date of the loan under the Promissory Note was September 1, 2016 (the "Maturity Date"). The TIC investors were in the process of refinancing the Loan in advance of the Maturity Date. However, due to certain improper actions of the Lender, the Loan refinancing did not occur. Not only did this cause a default under the Loan Documents, it also led to the Property losing a significant new tenant, diminishing the value of the Property and much needed cash flow for its operations. The Lender has also refused to release certain reserve funds needed to fund previously agreed upon tenant improvements. The Property Manager has been forced to utilize other operating funds to pay for the tenant improvements, severely diminishing cash reserves.

13. Moreover, on November 8, 2016, the Lender filed a *Verified Complaint for Foreclosure, Replevin, and Other Relief and Emergency Appointment of Receiver*, against the Debtors and other of the TICs (the "Complaint") in the Circuit Court of Pulaski County, Arkansas (the "Arkansas Circuit Court"), commencing Case No. 60CV-16-6167 therein (the "Foreclosure and Receiver Action"). The basis of the Foreclosure and Receiver Action is the failure to refinance and the resulting default. The deadline for the defendants in the Foreclosure and Receiver Action (including the Debtors) to respond to the Complaint was scheduled for December 9, 2016. The Arkansas Circuit Court scheduled a hearing in the Foreclosure and Receiver Action for January 12, 2017, which has now been stayed as a result of the filing of these bankruptcy cases.

14. As a result of the actions of the Lender, with diminished cash reserves and facing the possibility of the appointment of a receiver and/or the foreclosure on the Property, the

Debtors were forced to seek relief under chapter 11 of the Bankruptcy Code. Filing bankruptcy was necessary to avoid the inherent cost and expense of defending the Foreclosure and Receiver Action and the possible negative outcome of that litigation, while giving the Debtors an opportunity to attempt to resolve their issues with the Lender for the benefit of all parties-in-interest.

### The Need for Legal Services

15. The Debtors have separately sought authority to retain Whiteford, Taylor & Preston LLC ("WTP") as general bankruptcy counsel for purposes of these chapter 11 cases. In addition to the services to be provided by WTP, the Debtors also require special counsel to, among other things, represent them as a group and individually on business matters, to the extent that their interests are aligned in the ownership of the Regions Center Building, to prosecute certain causes of action against third parties, and to defend a receivership and foreclosure action brought against the Debtors in the Circuit Court of Pulaski County, Arkansas (the "Receivership and Foreclosure Action"). In short, the Debtors require the special counsel services in addition to the general bankruptcy services being provided by WTP throughout their reorganization proceedings.

### The Employment of Rubin and Rubin as Special Counsel to the Debtors

16. The Debtors have selected Rubin and Rubin to represent them as debtors and debtors-in-possession, in addition to representing them as owners of the Regions Center Building, because Rubin and Rubin has experience in representing TIC groups in general, and in representing the TIC group prior to the filing of these bankruptcy cases. The Debtors have selected Rubin and Rubin because Rubin and Rubin is familiar with the Debtors and has a working knowledge of their organizational structure, operations and the specifics of the TIC

organizational structure. Given the uniqueness and relative complexity of the Debtors' organization and shared interests, it is integral that the Debtors rely upon a firm such as Rubin and Rubin, which has an understanding of both the corporate operations of the Debtors and the issues which may arise as a result of the Debtors' chapter 11 cases.

17. The Debtors therefore submit that the retention of Rubin and Rubin under the terms described herein is appropriate under sections 327(e), 328 and 1107 of the Bankruptcy Code.

### The Services to be Rendered

18. The Debtors have retained Rubin and Rubin to assist them with various services, some of which may involve the aggregation of information from individual TIC debtors and non-debtors as required during the pendency of these chapter 11 cases. These services include but are not limited to the preparation of all reporting for the Regions Center Building and of their individual bankruptcy petitions and all related documents and pleadings and, subject to approval from the Bankruptcy Court, with the prosecution of their chapter 11 cases.

19. More specifically, the professional services that the Debtors may request Rubin and Rubin to render include:

   a. advising and consulting the Debtors with respect to the Receivership and Foreclosure Action;

   b. advising in negotiations with the Lender;

   c. communicating with the Debtors and non-debtor TIC owners on issues related to the bankruptcy and management of the Property and other business of the group, and consulting with the group to gain consensus on such issues allowing the group to communicate with "one voice";

   d. gathering information, representing, reporting and testifying for the entire TIC ownership on a property-level basis and on an individual-debtor(s) basis, as required;

e. advising and consulting on property management issues and reviewing the status of the current management company and asset management company; and

f. reviewing existing assets and propositions for sale or lease, including the retention and management of experts for such services on behalf of the TIC owners.

### **The Standards for Approving Employment**

20. Section 327(e) of the Bankruptcy Code authorizes a debtor/trustee, with court approval, to employ, for specified special purposes, an attorney that has represented the debtor previously, if such retention is in the best interests of the estate and provided that the attorney "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e). Special counsel retained under Section 327(e) cannot "represent the trustee in conducting the case …." *Id.*

21. Further, Section 328(a) of the Bankruptcy Code permits the employment of a "professional on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a). Courts have allowed the employment of counsel who had previously represented the debtor under Section 327(e) on the following conditions:

> (1) employment may only be authorized for a specified, special purpose other than conducting the case. The special purpose must be unrelated to the debtor's reorganization and must be explicitly defined or described in the application seeking approval of the attorney's employment; (2) the firm holds no adverse interest to the debtor; and (3) the employment of the firm is in the best interest of the estate.

*In re Phila. Newspapers, LLC*, 416 B.R. 438, 445 (Bankr. E.D. Pa. 2009) (*quoting In re Running Horse, L.L.C.*, 371 B.R. 446, 451 (Bankr. E.D. Ca. 2007)).

22. The "purpose of § 327(e) is to allow counsel who cannot meet the disinterestedness requirement of § 327(a) nevertheless to render valuable services to the debtor in matters where counsel has no adverse interest." *In re Tidewater Memorial Hosp., Inc.*, 110 B.R. 221, 227 (Bankr. E.D. Va. 1989); *see also In re Bowman,* 181 B.R. 836, 847 (Bankr. D.

8

Md. 1995).

23. Because of Rubin and Rubin's familiarity with the Debtor's pre-bankruptcy operations and the nature of its financing and capitalization, as well as the issues surrounding the Receivership and Foreclosure Action and the affirmative claims the Debtors have, the Debtors seek to employ Rubin and Rubin to assist in these bankruptcy cases, including assisting in all matters as described above. The Debtors believe that Rubin and Rubin's familiarity with the Debtor's operations and issues with its lender will allow it to provide those services in more efficient manner than would new counsel.

## Connections with Parties in Interest

24. To the best of the Debtors' knowledge, Rubin and Rubin has no connection with the Debtors, their creditors or any other party-in-interest in this case, their respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee, except as may be described in the Verified Statement.

## No Adverse Interest

25. The Debtors submit that Rubin and Rubin represents no interest adverse to the Debtors as debtors-in-possession or to the Debtors' estates in the matters upon which Rubin and Rubin is to be engaged for the Debtors.

26. Importantly, the Debtors recognize that in some limited instances, some TICs and their constituent investors may fund certain operational costs while others do not. In such circumstances, the potential exists for the funding TIC to become a creditor of the non-funding TIC. In the event that such an *inter se* debtor-creditor relationship should arise in the context of Debtors' chapter 11 cases, or that such other conflict between and amongst the Debtors exist, Rubin and Rubin may be in a position of concurrently representing one TIC as a debtor and

another (or multiple) TIC(s) as a creditor. To the extent that such a conflict develops, Rubin and Rubin may withdraw from representing one or more of the constituent Debtors.

## Professional Compensation

27. Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. *See* 11 U.S.C. § 328(a). Rubin and Rubin intends to apply for compensation for professional services rendered in connection with these cases subject to the approval of the Bankruptcy Court and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and orders of the Bankruptcy Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Rubin and Rubin. Rubin and Rubin has advised the Debtors that the current hourly rates applicable to the principal attorneys and paralegals proposed to represent the Debtors are:

| Professional | Rate Per Hour |
|---|---|
| I. Mark Rubin | $575.00 |
| Guy Rubin | $575.00 |

Other attorneys and paralegals may render services to the Debtors as needed. Generally, Rubin and Rubin's hourly rates are in the following ranges:

| Professional | Rate Per Hour |
|---|---|
| Partners | $575.00 |
| Associates | $375.00-510.00 |
| Legal Assistants/ Paralegals | $200.00-250.00 |

The Debtors understand that the hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.

28. The hourly rates set forth above are Rubin and Rubin's standard hourly rates for work of this nature. These rates are set at a level designed to fairly compensate Rubin and Rubin

10

for its work and to cover fixed and routine overhead expenses. It is Rubin and Rubin's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, copying and mailing charges from outside vendors and transcription costs, as well as non-ordinary overhead expenses such as overtime for secretarial personnel and other staff. Rubin and Rubin will charge the Debtors' estates for these expenses in a manner and at rates consistent with charges made generally to Rubin and Rubin's other clients. Rubin and Rubin believes that these expenses should fairly be charged to the clients incurring them rather than to increase the hourly rates and spread the expenses among all clients. In addition, Rubin and Rubin intends to seek compensation for all time and expenses associated with its retention in accordance with sections 330 and 331 of the Bankruptcy Code and any orders of the Bankruptcy Court, including the preparation of this Application, the Verified Statement, and related documents, as well as any monthly fee statements or interim or final fee applications.

29. Rubin and Rubin was retained on or about April 15, 2016, pursuant to the terms of an engagement agreement to represent the Debtors and non-debtor TIC owners. Over the course of the representation, Rubin and Rubin was paid for its services on a monthly basis until December 8, 2016.

30. On or about November 17, 2016, Rubin and Rubin received a retainer from the principal members of the Debtors that own the Regions Center building, in the amount of $166,234.93 for the purposes of fees and costs. Of this retainer, $91,208.00 was paid from

Rubin and Rubin to WTP for pre-bankruptcy legal fees and costs (including filing fees) for the period between November 29 and December 7, 2016.

31. Further, of this retainer, $36,234.93 was billed and paid to Rubin and Rubin for services rendered to the clients immediately prior to the Debtors' filing their bankruptcy petitions, leaving a total of $42,154.63 remaining in Rubin and Rubin's trust account on behalf of the Debtors. The remaining balance constitutes an evergreen security retainer (the "<u>Retainer</u>") to be applied against Rubin and Rubin's allowed fees and expenses, as permitted by the Bankruptcy Court.

32. Other than as set forth herein, there is no proposed arrangement to compensate Rubin and Rubin. Rubin and Rubin has not shared, nor agreed to share (a) any compensation it has received or may receive with any other party or person, other than with the shareholders, counsel and associates of Rubin and Rubin, or (b) any compensation another person or party has received or may receive.

## Best Interests of the Estates

33. As set forth above, Rubin and Rubin satisfies all the requirements for employment as attorneys for the Debtors under sections 327(e) and 1107 of the Bankruptcy Code.

34. The employment of Rubin and Rubin as attorneys for the Debtors is in the best interests of the Debtors' estates and is appropriate under sections 327 and 328 of the Bankruptcy Code.

## Request for Approval of Retention of
## Rubin and Rubin, *Nunc Pro Tunc* to Petition Date

35. The Debtors request that Rubin and Rubin's retention be made effective, *nunc pro tunc*, as of the Petition Date in order to allow Rubin and Rubin to be compensated for the work it has performed for the Debtors since the Petition Date, but prior to the Bankruptcy Court's

consideration of this Application.  With the filing of these cases, Rubin and Rubin immediately had to turn its attention to urgent matters including, but not limited to, addressing a variety of business and creditor related issues which arose as a result of the chapter 11 filings.  The Debtors submit that under the circumstances, retroactive approval to the Petition Date is warranted.

### Bankruptcy Rule 5002

36.     As set forth in the Verified Statement, no partner, counsel or associate of Rubin and Rubin is a relative of, or has been so connected with, any United States Bankruptcy Judge for the District of Delaware, any of the District Court Judges for the District of Delaware who handle bankruptcy cases, the United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware, the attorney for the United States Trustee assigned to these chapter 11 cases or any other employee of the Office of the United States Trustee.  Accordingly, the appointment of Rubin and Rubin is not prohibited by Bankruptcy Rule 5002.

### Notice

37.     Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtors' consolidated list of creditors holding the 20 largest unsecured claims; (iii) counsel to pre-petition secured lenders; and (iv) all parties who, as of the filing of this Application, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### No Prior Request

38.     No previous application for the relief sought herein has been made to this or any other court.

Dated: December 20, 2016         /s/ [signature]
                                 Lori McGhee
                                 Authorized Signatory for the Debtors

*2221870*

14