# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| **NNN 400 CAPITOL CENTER 16, LLC,** *et al.*[1] | Case No. 16-12728 (KG) (Jointly Administered) |
| Debtors. | |

---

[1] The debtors in these cases are: NNN 400 Capitol Center 1, LLC, Case No. 17-11251 (KG); NNN 400 Capitol Center 2, LLC, Case No. 16-12741 (KG); NNN 400 Capitol Center 3, LLC, Case No. 16-12750 (KG); NNN 400 Capitol Center 4, LLC, Case No. 16-12752 (KG); NNN 400 Capitol Center 5, LLC, Case No. 16-12753 (KG); NNN 400 Capitol Center 6, LLC, Case No. 16-12754 (KG); NNN 400 Capitol Center 7, LLC, Case No. 17-11253 (KG); NNN 400 Capitol Center 8, LLC, Case No. 17-11254 (KG); NNN 400 Capitol Center 9, LLC, Case No. 16-12755 (KG); NNN 400 Capitol Center 10, LLC, Case No. 16-12730 (KG); NNN 400 Capitol Center 11, LLC, Case No. 16-12731 (KG); NNN 400 Capitol Center 12, LLC, Case No. 16-12732 (KG); NNN 400 Capitol Center 13, LLC, Case No. 16-12733 (KG); NNN 400 Capitol Center 14, LLC, Case No. 16-12735 (KG); NNN 400 Capitol Center 15, LLC, Case No. 16-12736 (KG); NNN 400 Capitol Center 16, LLC, Case No. 16-12728 (KG); NNN 400 Capitol Center 17, LLC, Case No. 16-12737 (KG); NNN 400 Capitol Center 18, LLC, Case No. 16-12738 (KG); NNN 400 Capitol Center 19, LLC, Case No. 16-12739 (KG); NNN 400 Capitol Center 20, LLC, Case No. 16-12742 (KG); NNN 400 Capitol Center 21, LLC, Case No. 16-12743 (KG); NNN 400 Capitol Center 22, LLC, Case No. 16-12744 (KG); NNN 400 Capitol Center 24, LLC, Case No. 16-12746 (KG); NNN 400 Capitol Center 25, LLC, Case No. 17-11258 (KG); NNN 400 Capitol Center 26, LLC, Case No. 16-12747 (KG); NNN 400 Capitol Center 27, LLC, Case No. 16-12748 (KG); NNN 400 Capitol Center 28, LLC, Case No. 16-12749 (KG); NNN 400 Capitol Center 30, LLC, Case No. 17-11255 (KG); NNN 400 Capitol Center 32, LLC, Case No. 16-12751 (KG); NNN 400 Capitol Center 35, LLC, Case No. 17-11256 (KG); and NNN 400 Capitol Center 36, LLC, Case No. 17-11257 (KG).

|  |  |
|---|---|
| **NNN 400 CAPITOL CENTER 1, LLC;**<br>**NNN 400 CAPITOL CENTER 2, LLC;**<br>**NNN 400 CAPITOL CENTER 3, LLC;**<br>**NNN 400 CAPITOL CENTER 4, LLC;**<br>**NNN 400 CAPITOL CENTER 5, LLC;**<br>**NNN 400 CAPITOL CENTER 6, LLC;**<br>**NNN 400 CAPITOL CENTER 7, LLC;**<br>**NNN 400 CAPITOL CENTER 8, LLC;**<br>**NNN 400 CAPITOL CENTER 9, LLC;**<br>**NNN 400 CAPITOL CENTER 10, LLC;**<br>**NNN 400 CAPITOL CENTER 11, LLC;**<br>**NNN 400 CAPITOL CENTER 12, LLC;**<br>**NNN 400 CAPITOL CENTER 13, LLC;**<br>**NNN 400 CAPITOL CENTER 14, LLC;**<br>**NNN 400 CAPITOL CENTER 15, LLC;**<br>**NNN 400 CAPITOL CENTER 16, LLC;**<br>**NNN 400 CAPITOL CENTER 17, LLC;**<br>**NNN 400 CAPITOL CENTER 18, LLC;**<br>**NNN 400 CAPITOL CENTER 19, LLC;**<br>**NNN 400 CAPITOL CENTER 20, LLC;**<br>**NNN 400 CAPITOL CENTER 21, LLC;**<br>**NNN 400 CAPITOL CENTER 22, LLC;**<br>**NNN 400 CAPITOL CENTER 24, LLC;**<br>**NNN 400 CAPITOL CENTER 25, LLC;**<br>**NNN 400 CAPITOL CENTER 26, LLC;**<br>**NNN 400 CAPITOL CENTER 27, LLC;**<br>**NNN 400 CAPITOL CENTER 28, LLC;**<br>**NNN 400 CAPITOL CENTER 32, LLC;**<br>**NNN 400 CAPITOL CENTER 35, LLC;**<br>**NNN 400 CAPITOL CENTER 36, LLC;**<br>**NNN 400 CAPITOL CENTER, LLC and**<br>**NNN 901 Corporate Center, LLC** all<br>Delaware Limited Liability Companies<br>doing business in the States of Arkansas<br>and California,<br><br>      Plaintiffs.<br>v.<br><br>**FGG, INC.**, a Delaware Corporation doing business in the States of Arkansas and California; **SVN INTERNATIONAL CORP.**, a Delaware Corporation doing business in the States of Arkansas and California; and **PAUL MICHAEL GETTY**, an individual.<br><br>      Defendants. | Adversary No. |

## COMPLAINT

Plaintiffs NNN 400 CAPITOL CENTER 1, LLC, NNN 400 CAPITOL CENTER 2, LLC, NNN 400 CAPITOL CENTER 3, LLC, NNN 400 CAPITOL CENTER 4, LLC, NNN 400 CAPITOL CENTER 5, LLC, NNN 400 CAPITOL CENTER 6, LLC, NNN 400 CAPITOL CENTER 7, LLC, NNN 400 CAPITOL CENTER 8, LLC, NNN 400 CAPITOL CENTER 9, LLC, NNN 400 CAPITOL CENTER 10, LLC, NNN 400 CAPITOL CENTER 11, LLC, NNN 400 CAPITOL CENTER 12, LLC, NNN 400 CAPITOL CENTER 13, LLC, NNN 400 CAPITOL CENTER 14, LLC, NNN 400 CAPITOL CENTER 15, LLC, NNN 400 CAPITOL CENTER 16, LLC, NNN 400 CAPITOL CENTER 17, LLC, NNN 400 CAPITOL CENTER 18, LLC, NNN 400 CAPITOL CENTER 19, LLC, NNN 400 CAPITOL CENTER 20, LLC, NNN 400 CAPITOL CENTER 21, LLC, NNN 400 CAPITOL CENTER 22, LLC, NNN 400 CAPITOL CENTER 24, LLC, NNN 400 CAPITOL CENTER 25, LLC, NNN 400 CAPITOL CENTER 26, LLC, NNN 400 CAPITOL CENTER 27, LLC, NNN 400 CAPITOL CENTER 28, LLC, NNN 400 CAPITOL CENTER 30, LLC, NNN 400 CAPITOL CENTER 32, LLC, NNN 400 CAPITOL CENTER 35, LLC, NNN 400 CAPITOL CENTER 36, LLC, NNN 400 CAPITOL CENTER, LLC and NNN 901 CORPORATE CENTER, LLC (hereinafter collectively referred to as "400 CAPITOL CENTER"), by and through their undersigned counsel, file this Complaint against Defendants FGG, INC., SVN INTERNATIONAL CORP., and PAUL M. GETTY, and state as follows:

## PARTIES

1. Plaintiffs, 400 CAPITOL CENTER, bring this civil action seeking remedies for breach of contract, and for other tortious conduct, which occurred in Pulaski County, Arkansas, and in Santa Clara County, California. At all times material to the facts alleged herein, Plaintiffs 400 CAPITOL CENTER, were limited liability companies, organized and existing under the laws

of the State of Delaware, and registered to conduct business in the State of Arkansas, with their principal place of business in Pulaski County, Arkansas.

2.     Defendant FGG, INC. (hereinafter "FGG") is a corporation organized and existing under the laws of the State of Delaware, and registered to conduct business in the State of Arkansas, with its principal place of business in San Jose, California. Corporate Services Company is the registered agent to receive service of process for FGG at 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201.

3.     Defendant SVN INTERNATIONAL CORP. (hereinafter "SVN") is a corporation organized and existing under the laws of the State of Delaware, doing business as SPERRY VAN NESS, and registered to conduct business in the State of Arkansas, with its principal place of business in Boston, Massachusetts. The Corporation Company is the registered agent to receive service of process for SVN at 425 West Capitol Avenue, Suite 1700, Little Rock, Arkansas 72201.

4.     Upon information and belief, in connection with the allegations against FGG as set forth herein, SVN and FGG were partners operating under a common letterhead, with common employees, staff and management, which represented itself as "Sperry Van Ness First Guardian Group", and which Plaintiffs relied upon as being one unified entity.

5.     Upon information and belief, Defendant PAUL MICHAEL GETTY (hereinafter "GETTY") is a California resident and a California-licensed real estate broker who was, at all times relevant to this Complaint, the President and Chief Executive Officer of FGG. As alleged herein, GETTY conducted business in Santa Clara County, California, and Pulaski County, Arkansas, both individually and with Defendants FGG and SVN. At all relevant times, GETTY acted as an employee and/or agent of both FGG and SVN.

6.     Upon information and belief, LAURIE HINES (hereinafter "HINES") is an Oregon

resident and was a California-licensed real estate broker until her license expired on October 16, 2013, and was, at all times relevant to this Complaint, employed as a Project Director with FGG working under the supervision of GETTY. At all relevant times, HINES acted as an employee and/or agent of both FGG and SVN, and as such, those entities are vicariously responsible for her acts in the course and scope of her employment or affiliation with them.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this adversary pursuant to 28 U.S.C. §§ 151, 157, and 1334(b) because this action is a civil proceeding arising in or related to a case under the Bankruptcy Code.

8. Defendants have sufficient minimum contacts with the United States as a whole to give this Court personal jurisdiction over them pursuant to Federal Rule of Bankruptcy Procedure 7004(d) and (f).

9. All events and facts giving rise to the claims alleged herein occurred in either Arkansas, California or Oregon.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary arises in and relates to Chapter 11 cases currently pending in this District.

11. If any part of this adversary proceeding is found to be "noncore," Plaintiffs consent to the entry of final orders and judgments by this Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

## GENERAL ALLEGATIONS

12. The 400 CAPITOL CENTER entities were created for the purpose of investing as tenants in common in real property, an office building located at 400 W. Capitol Ave., Little Rock, Arkansas (hereinafter the "Property"), so as to qualify for tax benefits under §1031 of the Internal

Revenue Code. The terms and conditions of this investment are set forth in a Tenants in Common Agreement (hereinafter "TIC Agreement") executed on or about August 24, 2006 (TIC Agreement attached as Exhibit A).

13. Section 1.3 of the TIC Agreement provides that "[t]he Tenants in Common must unanimously approve … [any] sale of the Property (other than a sale pursuant to the Purchase Option or Call Option described in Section 11)."

14. The TIC Agreement does not provide for or reference the existence of a "steering committee" to act on behalf of all of the TIC owners of 400 CAPITOL CENTER. In fact, Section 1.5 of the TIC Agreement expressly prohibits such an arrangement, stating that "[n]o Tenants in Common is authorized to act as agent for, to act on behalf of, or to do any act that will bind, any other Tenant in Common, or to incur any obligations with respect to the Property." Therefore, any reference herein to a "steering committee" of 400 CAPITOL CENTER is used colloquially to refer to certain more active members of the TIC group of owners. Specifically, no steering committee was ever created to officially act, and was not authorized to act, for or on behalf of all of the TIC owners of 400 CAPITOL CENTER.

15. In February 2014 400 CAPITOL CENTER entered into a Property and Asset Management Agreement (hereinafter "PMA") with FGG, a franchisee of SVN, for complete management of the Property. (PMA attached as Exhibit B.)

16. As part of FGG's asset management duties under the PMA, FGG was to facilitate approvals of new leases, loans, and sales of assets, including the Property itself. (PMA, §2.2(c).) This responsibility included taking action to "obtain[] approvals from [the] Tenants in Common whether unanimous or otherwise." (PMA, Exhibit B.)

17. FGG was also required to communicate with the 400 CAPITOL CENTER entities by (a) holding "periodic conference calls with the Tenants in Common at least once per year during which call the Asset Manager shall apprise the Tenants in Common of the status of Property operations and shall answer questions raised by the Tenants in Common," (PMA, §2.15(i)) and (b) delivering "a report of all Significant Transactions[2] occurring during the prior month." (PMA, §4.2.)

18. For its asset management services, FGG was to receive (a) a monthly asset management fee of 1% of the Property's monthly gross revenues (PMA, §9.2); (b) a monthly property management fee of 3% of the Property's monthly gross revenues (PMA., §9.3); (c) leasing commissions at varying rates from 2%-6%, plus a lease override fee of 0.5%, of the value of the lease (PMA, §9.5); (d) a financing fee of 0.5% for any new or modified loan financing (PMA, §9.6); (e) a construction management fee for supervision of any construction or repair project, of 3% of the amount expended in a calendar year for construction, improvement or repair projects (PMA, §9.8); and (f) a disposition fee of 0.5% if the Property was sold, exchanged, or otherwise transferred (PMA, §9.7).

19. Most importantly for the purposes of this lawsuit, FGG was given the exclusive right to market and sell the Property for a 180-day period from the date a Super Majority[3] of the tenants in common voted to market the Property for sale. For these efforts FGG was to receive a Broker Fee of 1.5% of the gross sales price. (PMA, §9.7.)

20. The PMA was to terminate upon the sale of the Property. (PMA, §10.4.)

---

[2] Significant Transactions "shall mean all collections, payables, delinquencies, uncollectible items, vacancies and <u>other matters pertaining to the management, operating and maintenance of the Property</u>…" (PMA, §4.2 (emphasis added).)
[3] A super majority approval is defined as the written consent or approval of Tenants in Common holding in the aggregate more than 60% of the undivided interests in the Property. (PMA, §1.2.)

21. The PMA contains a choice of law provision requiring the agreement to "be governed by, construed, enforced and interpreted in accordance with the internal laws of the State of California, without regard to the location of the Property and the conflicts of law provisions and principles thereof." (PMA, §13.3.)

22. The PMA provides that in the event of a court action arising from a dispute under the agreement, the "substantially prevailing party" shall be entitled to recover its reasonable attorneys' fees and costs. (PMA, §13.12.)

23. On or about July 24, 2014, JS Partners, LLC made a bona fide offer to purchase the Property for $46,500,000.00 (hereinafter the "JSP Offer"). That offer, by its written terms, expired on August 10, 2014. (Offer attached as Exhibit C.)

24. The JSP Offer was transmitted to FGG on or about July 30, 2014. The next day, HINES, working as an agent for FGG and SVN, notified some of the 400 CAPITOL CENTER owners by email of the offer, advising said TIC owners not to communicate with JSP, further advising that FGG/SVN would properly vet the offer and provide an analysis and recommendations to the TIC owners. (Email dated July 31, 2014 attached as Exhibit D.) FGG and SVN also inferred the JSP Offer was being presented by a less than reputable broker, stating "the fact that it was tendered unsolicited to Ownership and our prior dealings with CMS suggests that we proceed with due caution."

25. The Plaintiffs justifiably accepted this advice of FGG/SVN, and as advised, deferred to the expertise of FGG and SVN, relying on the fiduciary duties owed by FGG and SVN to them, and took no action in contacting the buyer or the buyer's broker, or engaging in due diligence regarding the JSP Offer.

26. At no time prior to the expiration of the JSP Offer on August 10, 2014, did FGG or

SVN properly advise the TIC owners regarding the risks associated with rejecting the JSP Offer, or convene a conference call of all owners to discuss the JSP Offer, or take a vote of all TIC owners regarding how to respond to the JSP Offer. This conduct was a breach of their obligations under the PMA.

27. On August 12, 2014, <u>after</u> expiration of the JSP Offer, a conference call was organized by FGG/SVN. In that call, FGG recommended that the JSP Offer be rejected by the TIC owners. However, the information provided by FGG/SVN to support its recommendation was incomplete, biased, and failed to provide adequate information regarding the risks associated with rejecting the JSP Offer. The recommendation, and the failure to provide complete information regarding the risks of rejecting the JSP Offer, was motivated by FGG/SVN's self-interest because acceptance of the JSP Offer would have resulted in diminished revenue streams for FGG/SVN. Hence the recommendation was improper, fraught with conflicts of interest and amounted to a breach of their individual and collective fiduciary duties to the Plaintiff including all TIC owners.

28. On August 14, 2014, HINES, on behalf of FGG and SVN, sent an email to 400 CAPITOL CENTER stating that FGG and the 400 Capitol Center Steering Committee recommended 400 CAPITOL CENTER decline the JSP Offer for several reasons, including:

    a. incomplete unit leases that would add value to the building once finalized;

    b. capital expenditures that could allegedly be completed more cost effectively prior to a sale;

    c. an anticipated decrease in the defeasance/pre-payment penalty on the building's mortgage; and

    d. an anticipated net increase in excess of $3,000,000 in sales proceeds.

(Email dated August 14, 2014 attached as Exhibit E.)

29.  What FGG failed to consider, or report to 400 CAPITOL CENTER, was that the lease for Blue Cross Blue Shield, the major tenant in the Property, was set to expire on June 30, 2016.  If that tenant did not renew its lease, the value of the building, and its rents, would plummet.  In fact, Blue Cross Blue Shield did not renew its lease and the rental value of the building dramatically decreased.

30.  FGG also failed to consider that the Property's mortgage was due to mature on September 1, 2016, and that any loss of revenue to the building between the time of the JSP Offer and the loan maturity date would cause 400 CAPITOL CENTER to be unable to pay off the loan.  In fact, 400 CAPITOL CENTER was unable to pay off the loan and was forced to re-finance it at less than favorable terms, ultimately causing further financial loss to each 400 CAPITOL CENTER entity.

31.  Also significant to the JSP Offer was that JS Partners, LLC would have been committed to purchase the Property regardless of whether Blue Cross Blue Shield chose to renew its lease.

32.  As a result of FGG's belatedly relayed poor advice, 400 CAPITOL CENTER declined the JSP Offer and ultimately did not sell the Property.

33.  The TIC owners were forced to file bankruptcy after loan maturity, causing financial damages to the Plaintiffs.

34.  At that time, the best offer received was for $34,000,000.00; $12,500,000.00 less than the JSP Offer.

35.  FGG recommended declining the JSP Offer to 400 CAPITOL CENTER, and in communicating this recommendation, provided Plaintiffs with unrealistic projected tenancy rates,

unrealistic vacancy rates and overall dramatically increased valuations in the future, all of which was not based upon appropriate data, but rather motivated by self-interest in preserving its various streams of income during a longer time before the Property was to be sold.

36. FGG's failure to properly review and evaluate the JSP Offer caused 400 CAPITOL CENTER to incur in excess of $10,000,000.00 in damages.

## COUNT I
### Breach of Written Contract
### Against FGG and SVN

37. 400 CAPITOL CENTER reasserts, restates, and incorporates by reference paragraphs 1 through 36 as set forth above as if fully set forth here.

38. As alleged herein, FGG assumed contractual obligations to 400 CAPITOL CENTER related to the management of the Property, as set forth in the PMA.

39. FGG has refused, failed and breached conditions, covenants and promises required of it to be performed in accordance with the terms and conditions of the PMA as alleged herein; including, but not limited to, by failing to timely advise the TIC owners regarding the risks associated with rejecting the JSP Offer, and by failing to take a vote of all TIC owners regarding how to respond to the JSP Offer prior to the expiration of that offer on August 10, 2014.

40. 400 CAPITOL CENTER has duly performed all conditions, covenants and promises required of it to be performed in accordance with the terms and conditions of the PMA, except for those conditions, covenants and promises which were excused.

41. As a direct and proximate result of FGG's breach of the PMA, 400 CAPITOL CENTER lost an opportunity to sell the Property to JS Partners, LLC, and was damaged in in excess of $10,000,000.00.

42. 400 CAPITOL CENTER has engaged undersigned counsel to bring this action and is obligated to pay undersigned counsel a reasonable fee for its services in connection with this

action, including attorneys' fees and costs.

43. If it is found to be a "substantially prevailing party" in this action then 400 CAPITOL CENTER will be entitled to recover its reasonable attorneys' fees and costs for bringing this action as set forth in the PMA, at §13.12.

WHEREFORE, 400 CAPITOL CENTER prays for judgment as set forth below.

**COUNT II**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**Against FGG and SVN**

44. 400 CAPITOL CENTER reasserts, restates, and incorporates by reference paragraphs 1 through 36 as set forth above as if fully set forth here.

45. There is a covenant of good faith and fair dealing in every contract that implies that neither party will do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. FGG's conduct, as alleged herein, even if not a breach of any express contractual obligation owed to 400 CAPITOL CENTER, was a breach of this implied covenant.

46. As a direct and proximate result of FGG's breach of the implied covenant of good faith and fair dealing, 400 CAPITOL CENTER lost an opportunity to sell the Property to JS Partners, LLC, and was damaged in excess of $10,000,000.00.

47. 400 CAPITOL CENTER has engaged undersigned counsel to bring this action and is obligated to pay undersigned counsel a reasonable fee for its services in connection with this action, including attorneys' fees and costs.

48. If it is found to be a "substantially prevailing party" in this action then 400 CAPITOL CENTER will be entitled to recover its reasonable attorneys' fees and costs for bringing this action as set forth in the PMA, at §13.12.

WHEREFORE, 400 CAPITOL CENTER prays for judgment as set forth below.

## COUNT III
### Breach of Fiduciary Duty
### Against FGG, SVN, and GETTY

49. 400 CAPITOL CENTER reasserts, restates, and incorporates by reference paragraphs 1 through 36 as set forth above as if fully set forth here.

50. The duties assumed by FGG under the PMA fall within the scope of real estate broker services as that term is statutorily defined under California law. (*See* California Business & Professions Code § 10131.) Therefore, FGG was at all times bound by the rules of agency and the fiduciary obligations of a broker to its principal.

51. As alleged herein, FGG/SVN breached their fiduciary duties of loyalty and good faith, honesty, diligence, and disclosure, FGG/SVN put their own financial self-interest above the best interests of the TIC Owners. Moreover, GETTY actively participated in these breaches of fiduciary duty and is liable individually for his conduct.

52. As a direct and proximate result of Defendants' breaches of their fiduciary duties, 400 CAPITOL CENTER lost an opportunity to sell the Property to JS Partners, LLC, and was damaged in excess of $10,000,000.00.

53. The acts and omissions of Defendants, as alleged herein, were committed with oppression, fraud, and/or malice within the meaning of California Civil Code § 3294, thereby warranting an award of punitive damages in an amount according to proof.

WHEREFORE, 400 CAPITOL CENTER prays for judgment as set forth below.

## COUNT IV
### Negligence
### Against FGG, SVN, and GETTY

54. 400 CAPITOL CENTER reasserts, restates, and incorporates by reference paragraphs 1 through 36 as set forth above as if fully set forth here.

55. As a property manager and real estate broker, FGG/SVN owed a duty of care to 400 CAPITOL CENTER, and to each of the TIC Owners individually.

56. As alleged herein, FGG/SVN acted negligently in the performance of their duties as a property manager and real estate broker, thus breaching their duty of care. Moreover, GETTY actively participated in this negligence and is liable individually for his conduct.

57. Had Defendants exercised due care, skill, and diligence in the performance of their duties as a property manager and real estate broker, then 400 CAPITOL CENTER would have accepted the JSP Offer.

58. As a direct and proximate result of Defendants' negligence, 400 CAPITOL CENTER lost an opportunity to sell the Property to JS Partners, LLC, and was damaged in excess of $10,000,000.00.

WHEREFORE, 400 CAPITOL CENTER prays for judgment as set forth below.

## COUNT V
## Constructive Fraud
## Against FGG, SVN, and GETTY

59. 400 CAPITOL CENTER reasserts, restates, and incorporates by reference paragraphs 1 through 36 as set forth above as if fully set forth here.

60. Because FGG was acting as a real estate broker in connection with its performance under the terms of the PMA, a fiduciary relationship existed between FGG/SVN and 400 CAPITOL CENTER. Therefore, a confidential relationship existed at all times mentioned herein between FGG/SVN and 400 CAPITOL CENTER.

61. As alleged herein, the acts, omissions and/or concealments of Defendants constituted a breach of their legal duties to 400 CAPITOL CENTER.

62. The breach of fiduciary duties by an agent, which results in damage to the principal, constitutes constructive fraud even where there is no fraudulent intent.

63. 400 CAPITOL CENTER reasonably relied on the conduct of Defendants when it allowed the JSP Offer to expire on August 10, 2014.

64. As a direct and proximate result of Defendants' conduct, 400 CAPITOL CENTER lost an opportunity to sell the Property to JS Partners, LLC, and was damaged in excess of $10,000,000.00.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, 400 CAPITOL CENTER prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

Plaintiff 400 CAPITOL CENTER respectfully requests that the Court enter judgment in its favor and against Defendants FGG, SVN, and GETTY, and that it award compensatory damages in an amount equal to the loss suffered by 400 CAPITOL CENTER as a result of Defendants' conduct, together with prejudgment and post-judgment interest, punitive damages in an amount according to proof, costs of suit, reasonable attorneys' fees, and such other and further relief as this Court deems just and proper.

Dated: August 1, 2017
Wilmington, Delaware

WHITEFORD, TAYLOR & PRESTON LLC

By:    /s/ *Thomas J. Francella, Jr.*
Thomas J. Francella, Jr., Esq. (#3835)
The Renaissance Centre
405 King Street, Suite 500
Wilmington, DE 19801
Telephone: (302) 357-3252
Facsimile: (302) 357-3272
Email: tfrancella@wtplaw.com

*Counsel to the Debtors and Debtors in Possession*

-and-

RUBIN & RUBIN

*/s/ Guy B. Rubin*
Guy B. Rubin, Esq. (FL No. 691305)
Rubin & Rubin
111 SE Osceola St., Suite 200
Stuart, FL 34994
Telephone: (772) 283-2004
Facsimile: (772) 283-2009
Email:  grubin@rubinandrubin.com

*Special Counsel for Plaintiff*
*400 CAPITOL CENTER*