IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NNN 400 CAPITOL CENTER 16, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 16-12728 (JTD)<br>(Jointly Administered)<br>**Hearing Date: December 4, 2019 at 11:00 a.m. (ET)**<br>**Objection Deadline: November 20, 2019 at 4:00 p.m.** |

**DEBTORS' MOTION FOR AUTHORITY TO RETAIN AND COMPENSATE
GEORGE SMITH PARTNERS AS EXPERT WITNESS**

The Debtors in the above-captioned cases request entry of an order authorizing them to retain and compensate George Smith Partners ("GSP") as an expert witness in connection with a certain pending adversary proceeding brought by the Debtors related to these bankruptcy cases (the "Adversary Proceeding"),[2] and state in support:

**Jurisdiction, core nature, and venue**

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

---

[1] The debtors in these cases are: NNN 400 Capitol Center, LLC, Case No. 17-11250 (JTD); NNN 400 Capitol Center 1, LLC, Case No. 17-11251 (JTD); NNN 400 Capitol Center 2, LLC, Case No. 16-12741 (JTD); NNN 400 Capitol Center 3, LLC, Case No. 16-12750 (JTD); NNN 400 Capitol Center 4, LLC, Case No. 16-12752 (JTD); NNN 400 Capitol Center 5, LLC, Case No. 16-12753 (JTD); NNN 400 Capitol Center 6, LLC, Case No. 16-12754 (JTD); NNN 400 Capitol Center 7, LLC, Case No. 17-11253 (JTD); NNN 400 Capitol Center 8, LLC, Case No. 17-11254 (JTD); NNN 400 Capitol Center 9, LLC, Case No. 16-12755 (JTD); NNN 400 Capitol Center 10, LLC, Case No. 16-12730 (JTD); NNN 400 Capitol Center 11, LLC, Case No. 16-12731 (JTD); NNN 400 Capitol Center 12, LLC, Case No. 16-12732 (JTD); NNN 400 Capitol Center 13, LLC, Case No. 16-12733 (JTD); NNN 400 Capitol Center 14, LLC, Case No. 16-12735 (JTD); NNN 400 Capitol Center 15, LLC, Case No. 16-12736 (JTD); NNN 400 Capitol Center 16, LLC, Case No. 16-12728 (JTD); NNN 400 Capitol Center 17, LLC, Case No. 16-12737 (JTD); NNN 400 Capitol Center 18, LLC, Case No. 16-12738 (JTD); NNN 400 Capitol Center 19, LLC, Case No. 16-12739 (JTD); NNN 400 Capitol Center 20, LLC, Case No. 16-12742 (JTD); NNN 400 Capitol Center 21, LLC, Case No. 16-12743 (JTD); NNN 400 Capitol Center 22, LLC, Case No. 16-12744 (JTD); NNN 400 Capitol Center 24, LLC, Case No. 16-12746 (JTD); NNN 400 Capitol Center 25, LLC, Case No. 17-11258 (JTD); NNN 400 Capitol Center 26, LLC, Case No. 16-12747 (JTD); NNN 400 Capitol Center 27, LLC, Case No. 16-12748 (JTD); NNN 400 Capitol Center 28, LLC, Case No. 16-12749 (JTD); NNN 400 Capitol Center 30, LLC, Case No. 17-11255 (JTD); NNN 400 Capitol Center 32, LLC, Case No. 16-12751 (JTD); NNN 400 Capitol Center 35, LLC, Case No. 17-11256 (JTD); and NNN 400 Capitol Center 36, LLC, Case No. 17-11257 (JTD).

[2] The Adversary Proceeding is pending in this Court at AP No. 18-50384 (JTD).

**Background**

2.       On December 9, 2016, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On April 13, 2018, the Debtors commenced the Adversary Proceeding by filing a complaint (as amended, the "Complaint") asserting causes of action including, *inter alia*, breach of contract, negligence, tortious interference, and related counts against defendants (the "Defendants") including the Debtors' pre-petition lender and loan servicers, the present holder of the Debtors' loan and that entity's beneficial owner, and a commercial real estate firm that the Debtors had hired pre-petition to assist with locating a potential acquirer of their loan.[3]

3.       *Inter alia*, the Defendants, individually and in various combinations, illegally and inequitably thwarted the Debtors' attempts to refinance their pre-petition indebtedness, prevented the Debtors from accessing their own reserve funds, hindered the Debtors from timely paying property-related expenses, and prevented the Debtors from obtaining new tenants, all in furtherance of a conspiracy to artificially push the Debtors into default in order to extract the Debtors' equity for themselves, and justify imposing massive purported penalties on the Debtors.

4.       In connection with evaluating certain elements of the causes of action in the Complaint and the defenses and arguments raised by certain of the Defendants, the Debtors have reached the conclusion that they will need to retain an expert to assist in prosecuting the Adversary Proceeding by, *inter alia*, preparing expert reports, providing advice and analyses, providing expert testimony, and providing or performing related services (the "Expert Services").

---

[3] The Debtors incorporate the Complaint by reference.  To the extent of any inconsistencies between the Complaint and this Motion, the Complaint shall govern.

\43625800\1

5.      Without limitation, the Expert Services may cover issues including: the standards applicable to the conduct of lenders of commercial real estate loans, including without limitation lenders' duties to avoid self-dealing, and the incentives that lenders may have to prevent borrowers from refinancing; the validity of the purported penalties that the Defendants asserted against the Debtors in connection with the loan; and the appropriate due diligence that the buyer of a large note secured by commercial real estate should undertake prior to purchase.

6.      The Debtors wish to retain GSP, and, in particular, GSP's principal Mr. Gary M. Tenzer, to provide the Expert Services. After arm's length negotiations, the Debtors and GSP have agreed to certain terms to govern GSP's retention in this role, subject to Court Approval. These terms are set out in a certain engagement agreement (the "Engagement Agreement"), a copy of which is attached hereto as Exhibit "A," and incorporated herein by reference.

7.      The Debtors anticipate that Mr. Tenzer will lead GSP's engagement and, if expert trial testimony becomes necessary in the Adversary Proceeding, that Mr. Tenzer will serve as an expert witness for the Debtors at trial.

8.      The Debtors believe that GSP – and Mr. Tenzer in particular – are well qualified to perform the Expert Services. Mr. Tenzer is an experienced expert witness, having served as a litigation consultant and/or expert witness in over 300 cases. He is very proficient giving testimony at both jury and bench trials as well as by deposition and by declaration and is very skilled at explaining complicated financing concepts and issues in ways that courts and jurors alike can easily understand. He has provided expert opinions in cases relating to: bankruptcy interest rate determination, damage analysis, capital structure, standards and practices of real estate lending, bankruptcy plans of reorganization, real estate financings, disputes between public and private entities, property valuation, project feasibility, lending policy and loan

approval issues, partnership disputes, and standards of care and best practices applicable to loan restructurings. He is knowledgeable in the legal matters affecting real estate financing and transactions, as well as real estate, bankruptcy, and mortgage and commercial brokerage issues.

9. GSP itself is a real estate investment banking, financing, and consulting services firm specializing in the placement of commercial real estate debt, equity, and structured financing nationwide. GSP represents many of the largest and most prominent developers and owners of commercial and residential real estate throughout the country. Since 2004, the firm has closed over $25 Billion in real estate debt and equity financing. GSP places financing with over 250 lenders and equity investors.

10. While at GSP, in addition to his experience as an expert witness and litigation consultant, Mr. Tenzer has enjoyed a forty year career in originating, structuring, underwriting, and placing sophisticated real estate financing transactions. He has been personally involved in the placement of over $10 Billion dollars of real estate financing throughout the country. His placements have included: construction loans, permanent debt, mezzanine debt, and both preferred and joint venture equity. The properties financed include residential, multifamily, retail, office, commercial, industrial, mixed use, congregate care, hospitality, land development, large-scale community development, and special purpose properties, with debt and equity financing as large as $250 Million in debt and equity. Financing sources have included: Wall Street securitized lenders (CMBS), state and federally chartered commercial banks, insurance companies, hedge funds, savings and loans, pension funds, credit companies, opportunity funds, domestic and off-shore equity funds, Fannie Mae, Freddie Mac, and FHA/HUD.

11. In addition, Mr. Tenzer is a frequent guest lecturer in real estate and real estate finance at the UCLA Anderson School of Management as well as both the graduate and

undergraduate programs at the University of Southern California's Marshall School of Business. For the past three years, he has also served as co-chair of the Crocker Symposium on Real Estate and the Law, jointly sponsored by the LA County Bar and the UCLA Ziman Center for Real Estate where he is a member of the Advisory Board.

12. Subject to the terms and conditions of the Engagement Agreement, the Debtors propose to compensate GSP for its expert services at its customary hourly rates as follows:

| | |
|---|---|
| Mr. Tenzer, for all activities other than testimony at either deposition or trial | $835 |
| Mr. Tenzer, for testimony at either deposition or trial (subject to one-half day minimum) | $975 |
| GSP Research Associates | $450 |

13. GSP proposes to bill the Debtors on a monthly basis during the engagement, with invoices due within ten (10) business days following presentation.

14. Subject to the terms and conditions of the Engagement Agreement, the Debtors propose to reimburse GSP for its reasonable out-of-pocket expenses incurred in connection with this engagement, including business class airfare, travel expenses, parking duplication, and messenger services.  If automobile travel is required, the Debtors propose to reimburse mileage at $.585/per mile.  GSP agrees not to enter into any subcontracts or retain any other consultants without the Debtors' approval in advance, and agrees to incur no expense item of more than $250, and no expenses aggregating more than $500, without the Debtors' prior approval.

15. The Debtors propose to pay GSP a retainer of $25,000, and, if the retainer falls below 50% of this sum during the engagement, to reinstate the retainer following GSP's submission of a "special invoice."  Any remaining balance will be returned to the Debtors

following the termination of the engagement. Finally, in the event that Mr. Tenzer is designated as an expert witness, $5,000 of the retainer will become non-refundable.

16. GSP and Mr. Tenzer have agreed that they will not accept any other engagements in these cases that would conflict with their duties to the Debtors.

17. In the exercise of their business judgment, the Debtors have determined that GSP – and in particular Mr. Tenzer – are well qualified to assist the Debtors by performing the Expert Services, and that the terms and conditions of the Engagement Agreement, including but not limited to GSP's proposed rates, are reasonable. Consequently, the Debtors have determined that entering into the Engagement Agreement, and compensating GSP accordingly, would serve the estates' best interest.

## Summary of relief requested

18. The Debtors respectfully request entry of an order, pursuant to 11 U.S.C. §§105 and 363: (i) approving the Engagement Agreement; (ii) authorizing them to enter into, and take any actions that may be necessary to carry out the terms of, the Engagement Agreement; and (iii) authorizing them to compensate GSP pursuant to the Engagement Agreement without the need for any further order of the Court.

## Analysis

**A. Compensation of GSP is in the Estates' best interest, and should be approved under 11 U.S.C. § 363(b)**

19. The Debtors file this Motion pursuant to section 363 out of an abundance of caution, under the assumption that compensating GSP would constitute a use of the estates' funds outside of the "ordinary course of business." Although the Debtors recognize that such use

\43625800\1

of funds may or may not be considered to be outside of the "ordinary course of business," they believe that requesting Court approval for their proposed compensation of GSP is prudent.

20.     11 U.S.C. §363 authorizes a debtor to use property of the estate in the ordinary course of business, and section 363(b) permits a debtor to use property of the estate "other than in the ordinary course of business," after notice and a hearing.  Additionally, section 105(a) allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

21.     Courts often review a debtor's use of property of the estate outside of the ordinary course of business pursuant to the debtor's demonstration of a sound business purpose.  See, e.g., Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147 (D. Del. 1999).

22.     The Debtors' decision to compensate GSP pursuant to the Engagement Agreement reflects sound business judgment.  In evaluating the Adversary Proceeding, the Debtors have identified a need for GSP's expertize on, *inter alia*, numerous issues related to commercial real estate loans of the sort at issue in the Adversary Proceeding, and to lenders and borrowers thereunder.  The Debtors have evaluated GSP's and Mr. Tenzer's qualifications, and found them to be well qualified to provide the Expert Services.

23.     In addition, the Debtors believe that the costs associated with GSP's services are reasonable.  After a careful weighing of the value that GSP will provide to the estates versus the cost involved, the Debtors believe that their compensating GSP pursuant to the Engagement Agreement would be in the best interests of the estates.

24. Given the discrete and narrow focus of the tasks to be performed by GSP, as well as the fact that GSP's time entries will heavily implicate the attorney/client privilege, the Debtors believe that GSP should not be required to submit applications for approval of compensation. Rather, the Debtors propose that they be allowed to pay GSP's fees in their reasonable discretion, without further Court order.

**B.      GSP should not be considered a "professional" for purposes of 11 U.S.C. §327**

25. GSP should not be considered a "professional" for purposes of 11 U.S.C. §327. The term "professional persons" for purposes of 11 U.S.C. §327 refers only to "persons in those occupations which play a central role in the administration of the debtor proceeding." In re Sieling Assocs. Ltd. P'ship, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (quoting In re Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981)).

26. As the Sieling court explained, in determining whether an entity is a "professional" for purposes of section 327, "[W]e must examine the actual duties involved. If we find that the duties have a tangential relationship to the administration of the Debtor's estate such duties are not professional in nature. On the other hand, if the duties involved are central to the administration of the estate, such duties are professional in nature. Such duties would seem to include assisting in the negotiation of the debtor's plan, assisting in the adjustment of the debtor/creditor relationship, disposing of assets of the estate and acquiring assets on behalf of the estate." Id. (citing In re Johns-Manville Corp., 60 B.R. 612, 620 (Bankr. S.D.N.Y. 1986); Seatrain Lines, 13 R.R. at 981). See also In re Johns-Manville, 60 B.R. at 619 ("[T]he phrase 'professional persons' used in § 327(a) is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate.").

27.     Litigation experts are not considered "professional persons" within the meaning of 11 U.S.C. §327, and, consequently, the engagement of such experts does not require prior court authorization under that section.  In contrast to section 327 "professionals," expert witnesses play only a tangential role in the administration of an estate.  See, e.g., In re Napoleon, 233 B.R. 910, 914 (Bankr. D. N.J. 1999) (holding that expert witness employed by special litigation counsel did not require court approval under section 327); In re First Am. Health Care of Ga., Inc., 208 B.R. 996, 998 (Bankr. S.D. Ga. 1996) ("[A]n accountant who is retained solely as an expert witness in collateral litigation does not assume a central role in the administration of the bankruptcy."); Elstead v. Nolden (In re That's Entertainment Marketing Group, Inc.), 168 B.R. 226, 230 (N.D. Cal. 1994) ("While one could argue that the litigation involves an attempt to 'acquire assets of (sic) behalf of the estate,' the expert witness plays only a tangential role in this process, and thus under these circumstances the accountants were not 'professionals' within the meaning of § 327"); In re Babcock Dairy Co. of Ohio, 70 B.R. 691, 692 (Bankr. N.D. Ohio 1987) ("It seems that an expert witness is in a more 'tangential relationship' with the administration of the estate.  It cannot reasonably be inferred how such testimony can be construed to have measurably 'affected the administration' of the estate.").

28.     GSP will not be assisting with the administration of the estates.  GSP's role will be limited to providing the Expert Services in connection with the Adversary Proceeding, and providing related reports and advice.  As a result, GSP's provision of the Expert Services will not implicate section 327.

### Nunc pro tunc

29.     As the Court is well aware, a trial in the Adversary Proceeding is scheduled for December 9, 2019.  Due to the complexity of the issues and the quantity of material that Mr.

\43625800\1

Tenzer needs to review to prepare his expert report, he has already begun work. Accordingly, the Debtors request authority to retain and compensate GSP *nunc pro tunc* to October 20, 2019, which is the date on which GSP began working for the Debtors.

30. The Debtors submit that *nunc pro tunc* authority is appropriate under the circumstances. The issues on which Mr. Tenzer will be providing advice and other services are vital to the success of the adversary proceeding, which in turn is vital to the success of the bankruptcy cases. Considering the importance of Mr. Tenzer's role and the relatively short timeline leading up to the trial date, Mr. Tenzer, in consultation with the Debtors, determined that he needed to begin working in advance of the filing of this Motion in order to ensure that he will be able to perform the Expert Services in a timely and effective manner.

### Notice and conclusion

31. Notice of this Motion has been given to: (i) the Office of the United States Trustee; (ii) the top twenty (20) unsecured creditors of the Debtors as identified in the Debtors' Schedules; (iii) the Debtors' lender; and (iv) all parties that have requested such notice pursuant to Bankruptcy Rule 2002 as of this date. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

\43625800\1

WHEREFORE, the Debtors respectfully request that the Court enter an Order substantially in the attached form: (i) approving the Engagement Agreement; (ii) authorizing the Debtors, effective as of October 20, 2019, to enter into, and take any actions that may be necessary to carry out the terms of, the Engagement Agreement; and (iii) authorizing the Debtors, effective as of October 20, 2019, to compensate GSP pursuant to the Engagement Agreement without the need for any further order of the Court.

Dated:  November 6, 2019

                                              COZEN O'CONNOR

By:  */s/ Thomas J. Francella, Jr.*
      Thomas J. Francella, Jr. (No. 3835)
      Simon E. Fraser (No. 5335)
      1201 N. Market Street
      Suite 1001
      Wilmington, DE  19801
      Telephone:  (302) 295-2000
      tfrancella@cozen.com
      sfraser@cozen.com

*Counsel to the Debtors*