

1105 NORTH MARKET STREET
SUITE 901
WILMINGTON, DELAWARE 19801

MAILING ADDRESS:
P.O. BOX 1380
WILMINGTON, DE  19899-1380

CHRISTOPHER P. SIMON
CSIMON@CROSSLAW.COM
(302) 777.4200, EXT. 102

August 3, 2020

**VIA CM/ECF & ELECTRONIC MAIL**
The Honorable John T. Dorsey
United Bankruptcy Court for the District of Delaware
824 N. Market Street, 5th Floor
Wilmington, DE 19801

> Re:    *NNN400 Capitol Center 16, LLC, et al.*
> *Bankr. D. Del. Case No. 16-12728 (JTD);*
> *NNN400 Capitol Center 16, LLC, et al. v. Wells Fargo Bank, N.A.,*
> *Bankr. D. Del. Adv. Proc. No. 18-50384 (JTD)*

Dear Judge Dorsey:

As you know, we represent Rubin & Rubin, P.A. in connection with the contested matter initiated by the filing of the *Motion of the United States Trustee to Revoke or Terminate Retention of Rubin and Rubin, P.A. and Disallow Fees and Expenses of Rubin and Rubin, P.A. and Seth Denison* [Adv. D.I. 564], *Lender Defendants' Joinder in Support of the Motion of the United States Trustee to Revoke or Terminate Retention of Rubin and Rubin, P.A. and Disallow Fees and Expenses of Rubin and Rubin, P.A. and Seth Denison* [Adv. D.I. 619], and *Somera Road Inc.'s Notice of Joinder in the Motion of the United States Trustee to Revoke or Terminate Retention of Rubin and Rubin, P.A. and Disallow Fees and Expenses of Rubin and Rubin, P.A. and Seth Denison* [Adv. D.I. 622]

During the hearing on July 30, 2020, Your Honor asked questions about the prior testimony by witnesses regarding Moses Tucker Real Estate, the Debtors' property manager, and its independent counsel, the Quattlebaum Firm.

The depositions of I. Mark Rubin and Lori McGhee were admitted into evidence. We have identified the following testimony from transcripts that relates to Moses Tucker Real Estate, the Quattlebaum, Firm and Rubin & Rubin, P.A.

1.      **Deposition of Mark Rubin, May 21, 2019 (MP Ex. 14)**

**Page 23:1-16 (Page 7 of MP Ex. 14)**

1 Q. Okay. So you're refusing to answer the
2 question?
3 A. I think that's outside the scope of this
4 deposition. This is a privilege log deposition,
5 and -- and the compensation agreements between
6 attorneys that are -- that are on one side of the
7 case and working together is -- is -- is not your
8 business, and it's beyond the scope of the
9 recommendation of the mediator.
10 Q. Okay. Respectfully, in telling me it's
11 not my business, first, you're not the judge.
12 Secondly, this deposition is about
13 privilege logs, who represents whom. And I'm
14 asking you about a -- an email that your own
15 lawyer was representing you today as -- which
16 bears the name Rubin & Rubin.

**Page 104:10-105:24 (Page 27 of MP Ex. 14)**

10 Q. Who is Lori Adcock-McGhee?
11 A. She was an employee at the time of Moses
12 Tucker Real Estate.
13 Q. Okay. Was Moses Tucker a client of the
14 TICS?
15 A. No.
16 Q. Was Moses Tucker a client of Rubin &
17 Rubin?
18 A. No.
19 Q. Was Moses Tucker a client of Guy Rubin's
20 law firm?
21 A. No.
22 Q. What was the business of Moses Tucker?
23 A. They were the property manager,
24 contracted by the owner -- or, actually,
25 contracted by FGG on behalf of the owners.
1 Q. Okay. So is it your contention that
2 even though this document was copied to
3 individuals from Moses Tucker, that it's still
4 privileged?
5 A. Yes, of course.
6 Q. And you say "yes, of course"
7 emphatically. What is your reason for believing

8 that it would be privileged?
9 A. Moses Tucker was managing the property
10 under the contract -- subcontract from FGG, for
11 the beneficial interest of the clients, which were
12 the 32 tenants in common. And the subject of this
13 email, without having even read it, I can tell you
14 that this had to do with discussions and -- and
15 drafting of the Mitchell Williams lease and,
16 therefore, it would be privilege.
17 Q. Okay. So Moses Tucker is drafting the
18 lease?
19 A. No.
20 Q. Okay. They were just providing factual
21 information with respect to the lease, right?
22 A. They were con- -- they were consulting
23 with counsel on behalf of the tenants in common
24 with respect to the lease.

**Page 105:25-106:8 (Pages 27-28 of MP Ex. 14)**

25 Q. Okay. And their consultation involved
1 them providing factual information concerning the
2 lease, correct?
3 A. Could be. I don't know. I didn't read
4 this email.
5 Q. Well, are you aware of any instances
6 where Moses Tucker was providing legal advice?
7 A. The privilege doesn't necessarily go
8 only one way.

**Page 107:2-19 (Page 28 of MP Ex. 14)**

2 Q. Okay. So if a service provider to the
3 property at issue in this case provides
4 information to you in connection with your work as
5 a lawyer on behalf of the plaintiffs, do you
6 considered that privileged, if it's factual
7 information?
8 A. It depends on the context.
9 Q. What would that -- what does that mean?
10 A. Well, if it's work product, the
11 information that I have might be gathered as a
12 part of work product. It could be attorney-client
13 privilege.
14 Don't forget, you use the word "service
15 provider." I would prefer to use the word

16 "agent."
17 FGG was an agent of the owners. And
18 Moses Tucker was an agent under the subcontract
19 with FGG.

**Page 108:16-25 (Page 28 of MP Ex. 14)**

16 Q. So what then -- where -- what are the
17 distinctions, with respect to someone that
18 provides services to the property, that you are
19 relying on to determine whether or not they
20 constitute an agent for the privilege purposes?
21 A. Well, you're -- you're mixing
22 relationship with scope of work. And they're
23 separate things. And then, that doesn't even
24 consider the context in which the information is
25 either delivered or received by the attorney.

**Page 137:8-16 (Page 35 of MP Ex. 14)**

8 Q. Okay. And you previously testified that
9 you believed Moses Tucker as an agent of the -- of
10 the tenants falls within the scope of privilege,
11 correct?
12 A. I said that they could fall within the
13 scope of privilege, depending upon the subject
14 matter --
15 Q. Okay.
16 A. -- of the communication.

**Page 147:22-148:3 (Page 38 of MP Ex. 14)**

22 Q. The question was do you believe the
23 document that's been marked as Exhibit 14 is
24 privileged.
25 A. That would be a work product.
1 Q. So you're declining to answer?
2 A. Yeah. That's for the Court to
3 determine.

**Page 157:22-158:25 (Pages 40-41 of MP Ex. 14)**

22 Q. Okay. Do you believe that to be
23 privileged communication?
24 A. Well, it depends on what's on there. It
25 could be some notes, could be some comments. I

1 don't -- I don't -- without looking at it, I --
2 you -- you couldn't tell.
3 Q. Right. Moses Tucker has never been your
4 client, correct?
5 A. Correct.
6 Not correct.
7 Q. Okay. When have you represented Moses
8 Tucker?
9 A. There was a period of time when Moses
10 Tucker had agreed to join the group in -- in the
11 refinance of the property and become a member of
12 the -- of the new entity that was going to be
13 moving forward. At that time we were representing
14 Moses Tucker.
15 Q. Have you withheld any documents based on
16 that representation?
17 A. I believe those communications are on
18 the privilege log.
19 Q. What were the dates of your
20 representation of Moses Tucker?
21 A. Can't tell you the exact dates, but I
22 would say a general time frame would be around
23 August 1st through December the 1st.
24 Q. Of which year?
25 A. 2016.

**Page 159:1-160:2 (Page 41 of MP Ex. 14)**

1 Q. Okay. And did you have an engagement
2 letter with them?
3 A. No.
4 Q. And was the representation through I.
5 Mark Rubin, P.A.?
6 A. Yes.
7 Q. Was your brother's law firm engaged to
8 represent them?
9 A. It's possible.
10 Q. You just don't know?
11 A. I -- I wasn't asked to prepare for that.
12 I'd have to -- I'd have to look.
13 Q. Okay. I mean, it's a basis of -- it's
14 a -- it's the basis for certain of the privilege
15 log entries, correct, is that representation of
16 Moses Tucker? I believe that's what you said.
17 A. I said that some of those documents, if
18 there are any documents, would be -- I think would

19 be in a privilege log, and it would -- and it
20 would be stated in the log what the basis was.
21 Whether Guy Rubin's firm, Rubin Law
22 Associates, was retained or not, if he was, if
23 that firm was, it would be under the umbrella of
24 Rubin & Rubin or I. Mark Rubin, P.A., and,
25 therefore, it would -- if there was a privilege
1 that is -- that attached through my firm, it would
2 automatically attach through his firm.

2.      **Deposition of I. Mark Rubin, Oct. 1, 2019 (MP Ex. 15)**

        **Page 377:1-378:12 (Pages 95-96 of MP Ex. 15)**

1 Did you provide comments to that
2 agreement?
3 A. I believe it was negotiated, yes.
4 Q. Okay.
5 Did you or your firm represent
6 Moses Tucker?
7 A. Yes.
8 Q. Okay. Which firm?
9 A. Rubin & Rubin, PA.
10 Q. Okay.
11 Is there an engagement letter to
12 that effect?
13 A. No.
14 Q. Do you know the time period at which
15 you were -- you or your firm were engaged to
16 represent Moses Tucker?
17 A. Generally.
18 Q. What was that time frame?
19 A. That was the time frame when Moses
20 Tucker was part of the borrower group in the
21 refinance with UBS and with Calmwater.
22 Q. Okay.
23 How did that representation end?
24 A. Well, when the -- when the
1 transaction failed, there was no borrower
2 entity that was in the -- in a new loan and
3 therefore, there was no reason to continue the
4 representation.
5 Q. So at that point in time, the
6 representation ended?
7 A. Well, it eventually ended. It may
8 not have had a simultaneous death with the

9 transaction, but -- because there was a -- was
10 a prolonged effort to try to revive the
11 transaction, but eventually it terminated.
12 Q. Okay.

**Page 387:2-24 (Page 98 of MP Ex. 15)**

2 MR. DENTON: I'm glad we're on
3 video, Mr. Rubin. Thanks for the jeopardy
4 countdown.
5 BY MR. DENTON:
6 Q. Was MTRE represented by counsel other
7 than you during any of the time periods that
8 are at issue in the case?
9 A. Who is MTRE?
10 Q. Oh, yeah, Moses Tucker.
11 A. I was just testing you.
12 Q. There you go. You got me.
13 A. Yes, they were.
14 Q. And who were they represented by?
15 A. Quattlebaum.
16 Q. Okay.
17 When -- when were they represented
18 by that firm?
19 A. I think they had a long-standing
20 representation of the Moses Tucker firm.
21 Q. Were they representing Moses Tucker
22 at the same time that you contend you and your
23 firm were representing Moses Tucker?
24 A. Yes.

3.     **Deposition of I. Mark Rubin, June 25, 2020 (MP Ex. 171)**

   **Pages 68:5-69:7 (Page 18 of MP Ex. 171)**

5 Q. Mr. Rubin, you believe that at
6 the end of 2016 there was an
7 attorney-client relationship with Moses
8 Tucker Real Estate for a short period of
9 time; correct?
10 A. Did I believe that in 2016? Is
11 that the question?
12 Q. No. You believed that there was
13 an attorney-client relationship with
14 Moses Tucker Real Estate -- between you
15 and Moses Tucker Real Estate at the end

16 of 2016; correct?
17 MR. SIMON: Objection to form.
18 A. I don't agree with the premise
19 of your question.
20 Q. What premise exactly don't you
21 agree with?
22 A. Well, there was a -- there was a
23 privilege with Moses Tucker. And for a
1 brief time, they were part of the LLC
2 that we referred to earlier. And to the
3 extent that they were a member of that
4 LLC, there was an extension of privilege,
5 and perhaps some kind of attorney-client
6 relationship by extension, but that's for
7 a Court to decide.

4.      **Deposition of Lori Adcock-McGhee, as 30(b)(6) Representative of MTRE, Oct. 30, 2019 (MP Ex. 16)**

**Page 11:4-12 (Page 4 of MP Ex. 16)**

4 Q. Good. Thank you. Mr. Rubin does not represent you
5 at this deposition; does he?
6 A. No.
7 Q. Okay. Has he ever represented you as an attorney in
8 any capacity?
9 A. No.
10 Q. Has he ever represented Moses Tucker as an attorney
11 in any capacity?
12 A. No.

**Page 26:8-25 (Page 8 of MP Ex. 16)**

8 A. I do consider all of my communication directly with
9 Rubin & Rubin to be privileged.
10 Q. (BY MR. CHRONIS) Now, you do remember saying under
11 oath that Moses Tucker is not represented and has never
12 been represented by Mr. Rubin; right?
13 A. Yes.
14 Q. You do remember saying under oath that Mr. Rubin
15 doesn't represent you; right?
16 A. Yes.
17 Q. Okay. And yet, now, after Mr. Rubin just said all
18 that he said on the record, you're taking the position
19 that you're not going to answer anything -- you're not
20 going to provide us with any testimony about any

21 communications you had with Mr. Rubin; is that your
22 testimony now?
23 MR. RUBIN: Objection to form.
24 A. I consider my communication with anyone with Rubin &
25 Rubin to be privileged.

**Page 28:1-22 (Page 8 of MP Ex. 16)**

1 MR. RUBIN: Objection. To the extent that any
2 question that you're asked asks you to reveal privileged
3 information that you gained from or with an attorney
4 representing the plaintiffs in this case or Moses
5 Tucker's attorney, that's privileged and you should
6 refuse to answer.
7 A. I will comment on correspondence that you've already
8 been provided.
9 Q. (BY MR. CHRONIS) Ma'am, is there a reason why
10 you're not answering the question that I'm asking you?
11 And I'll ask it again one last time: Is it your
12 intent during this deposition not to provide testimony
13 as to any communications that you or Moses Tucker had
14 with Mr. Rubin because it is privileged?
15 MR. RUBIN: Objection to form to the first question
16 that you asked her and to the second question you asked.
17 A. I will testify on correspondence that has already
18 been supplied as evidence in this case.
19 Q. (BY MR. CHRONIS) And why will you testify as to
20 that as opposed to any other communications that you had
21 with Mr. Rubin?
22 A. Because other communications are privileged.

**Page 91:19-25 (Page 24 of MP Ex. 16)**

MR. CHRONIS: Mr. Rubin, if you are instructing this
20 witness not to answer notwithstanding that you're not
21 representing her, then please do it. Otherwise, stop
22 objecting and let the witness answer the question.
23 Q. (BY MR. CHRONIS) So, did that information about the
24 ownership much rather holding on to the property for a
25 little longer come from Mr. Rubin?

**Page 253:21-25 (Page 65 of MP Ex. 16)**

21 Q. (BY MR. CARTER) And just to be clear, for the
22 record, that's notwithstanding your testimony that
23 Mr. Mark Rubin does not represent you personally or
24 Moses Tucker; is that correct?
25 A. Yes.

**Page 262:3-263:2 (Page 67 of MP Ex. 16)**

3 Q. (BY MR. RUBIN) Okay. All right. We're finished
4 with that document. Now, this morning when we started
5 this deposition, Mr. Chronis asked you has Rubin & Rubin
6 ever represented Moses Tucker Real Estate or Moses
7 Tucker and your answer was -- let me say: He asked you
8 if Rubin & Rubin ever represented Moses Tucker as an
9 attorney in any capacity and your answer was no, and I
10 want to ask you about that.
11 Did there come a time at the -- during the time of
12 the refinancing in the summer and fall of 2016 when
13 Moses Tucker had agreed to become part of an LLC that
14 was going to own the property?
15 MR. CHRONIS: Form.
16 A. Yes.
17 Q. (BY MR. RUBIN) Okay. And did Moses Tucker agree to
18 acquire at least one percent of the property, if not
19 more, under certain conditions?
20 MR. CHRONIS: Form.
21 A. Yes.
22 Q. (BY MR. RUBIN) And at the time that they agreed to
23 become a member of the LLC, to your knowledge, did Moses
24 Tucker consider itself to be represented by Rubin &
25 Rubin, who was representing that LLC?
1 MR. CHRONIS: Object to the form.
2 A. Yes.

**Page 275:22-276:24 (Page 70 of MP Ex. 16)**

22 Q. (BY MR. RUBIN) Okay. Let's go on to another
23 subject. Mr. Chronis asked you a lot of questions about
24 whether there was friction between Moses Tucker and the
25 law firm that represented the owners, Rubin & Rubin.
1 How long, to your knowledge, did Rubin & Rubin and Moses
2 Tucker work together -- have worked together?
3 MR. CHRONIS: Form.
4 A. A long time.
5 Q. (BY MR. RUBIN) Right. And, in fact, Rubin & Rubin
6 and Moses Tucker first became acquainted in
7 approximately April of 2016; is that correct?
8 A. That is correct.
9 Q. And that's when FGG was trying to convince the
10 owners to sell the property; isn't that correct?
11 A. That is correct.
12 Q. For a price that the owners thought was too low?
13 A. That is correct.

14 Q. And as a result, the owners hired Rubin & Rubin to
15 try to find other alternatives and help them; is that
16 correct?
17 MR. CHRONIS: Form.
18 A. That is correct.
19 Q. (BY MR. RUBIN) And did not Moses and Tucker and
20 Rubin & Rubin work together for the next three years,
21 including up until today, to try to save this property
22 for the owner?
23 MR. CHRONIS: Form.
24 A. Absolutely.

Reference is also made to the following exhibits used at the hearing in the contested matter
(Rubin Exs. 4, 6, 8, 10, 25; Moving Parties' Exs. 162, 171, and specifically the descriptions in Ex.
162):

| ID | DATE | PRIV BASIS | PRIV DESCR | TITLE | SENT FROM | SENT TO | CC |
|---|---|---|---|---|---|---|---|
| 41723 *(Page 76 of MP-162)* | 8/3/16 18:13 | WP - Attorney Work Product | Confidential communication between attorneys with respect to draft state law opinion regarding refinancing. | RE: 400 Capitol Center Holdings, LLC - Draft Opinions | Tim Grooms | M Rubin; Kaufman, Lee E.; JSelig@mwlaw.com; RBeard@mwlaw.com | William Li; Daniel J. Beck; Leyden, James |
| 40573 *(Page 88 of MP-162)* | 8/17/16 16:01 | AA - Attorney Advice | Confidential communication between attorneys discussing thoughts and impressions with respect to conference call with prospective lender. | Regions Refi | John Martin | 'Daniel J. Beck'; 'Tim Grooms' | Chris Moses; Lori Adcock-McGhee |
| 42702 *(Page 92 of MP-162)* | 8/22/16 16:38 | AC - Attorney Client | Confidential communication between attorney and client with respect to terms of guarantors of UBS loan. | Regions | Rett Tucker | M Rubin; tgrooms@qgtlaw.com | Chris Moses; Lori Adcock-McGhee; John Martin; Jimmy Moses |

| ID | DATE | PRIV BASIS | PRIV DESCR | TITLE | SENT FROM | SENT TO | CC |
|---|---|---|---|---|---|---|---|
| 42528 *(Page 92 of MP-162)* | 8/22/16 18:24 | AC - Attorney Client | Confidential communication between attorney and client with respect to terms of guarantors of UBS loan. | Re: Regions | Rett Tucker | M Rubin; tgrooms@qgtlaw.com | Chris Moses; Lori Adcock-McGhee; John Martin; Jimmy Moses |
| 43289 *(Page 93 of MP-162)* | 8/23/16 3:53 | AC - Attorney Client | Confidential communication between attorney and client with respect to terms of guarantors of UBS loan. | RE: Regions | M Rubin | Rett Tucker; tgrooms@qgtlaw.com | Chris Moses; Lori Adcock-McGhee; John Martin; Jimmy Moses; Will Li (wLi@RubinandRubin.com) |
| 41696 *(Page 93 of MP-162)* | 8/23/16 9:12 | AC - Attorney Client | Confidential communication between attorney and client with respect to terms of guarantors of UBS loan. | FW: 400CC Sponsor Documents | M Rubin | Rett Tucker; Jimmy Moses; Chris Moses | |
| 43272 *(Page 102 of MP-162)* | 8/29/16 1:40 | WP - Attorney Work Product; AC - Attorney Client | Confidential communication between attorney and client with respect to terms of guarantors of UBS loan, extension of Mitchell Williams lease, Property Management Agreement, and guarantor percent ownership. | Re: Regions | M Rubin | Rett Tucker | Tim Grooms; Chris Moses; Lori Adcock-McGhee; John Martin; Jimmy Moses; Daniel J. Beck; William Li |

| ID | DATE | PRIV BASIS | PRIV DESCR | TITLE | SENT FROM | SENT TO | CC |
|---|---|---|---|---|---|---|---|
| 42198 *(Page 103 of MP-162)* | 8/29/16 15:21 | AC - Attorney Client | Confidential communication between attorneys and client with respect to transfer of Regions Funds from Moses Tucker and status of original loan. | RE: Regions Funds | Tim Grooms | Rett Tucker; M Rubin | Chris Moses; Jimmy Moses |
| 43440 *(Page 104 of MP-162)* | 8/30/16 16:19 | AC - Attorney Client | Confidential communication between attorneys and client with respect to transfer of Regions Funds from Moses Tucker and status of original loan. | RE: Regions Funds ***Confidential*** | M Rubin | Tim Grooms; Rett Tucker | Chris Moses; Jimmy Moses |
| 43996 *(Page 113 of MP-162)* | 9/6/16 9:47 | AC - Attorney Client | Confidential communication between attorney and client with respect to amount and terms of UBS refinancing. | RE: Lease Language | Jimmy Moses | Rett Tucker; John Martin; M Rubin | Daniel Beck; tgrooms@qgtlaw.com; Chris Moses; Lori Adcock-McGhee; Everett C. (Clarke) Tucker IV |
| 42662 *(Page 114 of MP-162)* | 9/6/16 17:18 | AC - Attorney Client | Confidential communication between attorneys with respect to requirements for SPC entities in UBS loan documents. | Regions/UBS Loan Agreement | Daniel J. Beck | William Li | M Rubin; Tim Grooms; Clarke Tucker |

| ID | DATE | PRIV BASIS | PRIV DESCR | TITLE | SENT FROM | SENT TO | CC |
|---|---|---|---|---|---|---|---|
| 43760 *(Page 164 of MP-162)* | 9/28/16 17:14 | WP - Attorney Work Product; AC - Attorney Client | Confidential communication between attorneys and client with respect to who will be a guarantor, persons signing Indemnity and Guaranty Agreement, edits to agreement, and Hazardous Substances Indemnity Agreement. | Regions Building/ Guaranty and Hazardous Substances Indemnity | Daniel J. Beck | M Rubin | Tim Grooms; Rett Tucker; Jimmy Moses; Chris Moses; John Martin; Clarke Tucker |
| 41959 *(Page 166 of MP-162)* | 9/28/16 17:27 | WP - Attorney Work Product; AC - Attorney Client | Confidential communication between attorneys and client with respect to who will be a guarantor, persons signing Indemnity and Guaranty Agreement, edits to agreement, and Hazardous Substances Indemnity Agreement. | RE: Regions Building/ Guaranty and Hazardous Substances Indemnity | Jimmy Moses | M Rubin; Rett Tucker | Tim Grooms; Chris Moses; John Martin; Clarke Tucker; Daniel J. Beck |
| 43496 *(Page 176 of MP-162)* | 9/30/16 10:57 | WP - Attorney Work Product | Confidential communication between attorneys with respect to draft SNDA for Mitchell Williams and representation of 400 Capitol Center, Chris Moses, Jimmy Moses and Rett Tucker. | FW: Calmwater Loan - Regions Bank - SNDA for Mitchell Williams | M Rubin | Daniel J. Beck | Tim Grooms |

| ID | DATE | PRIV BASIS | PRIV DESCR | TITLE | SENT FROM | SENT TO | CC |
|---|---|---|---|---|---|---|---|
| 42867 (Page 177 of MP-162) | 9/30/16 12:25 | AC - Attorney Client | Confidential communication between attorneys with respect to draft SNDA for Mitchell Williams and representation of 400 Capitol Center, Chris Moses, Jimmy Moses and Rett Tucker. | RE: Calmwater Loan - Regions Bank - SNDA for Mitchell Williams | Daniel J. Beck | M Rubin | Tim Grooms |
| 42066 (Page 181 of MP-162) | 10/5/16 13:13 | WP - Attorney Work Product; AC - Attorney Client | Confidential communication between attorneys with respect to guarantor requirements for Agreement for Indemnity and Guaranty Fee and the Indemnity and Guarantee Agreement. | RE: MTRE PMA | Daniel J. Beck | M Rubin; William Li | Tim Grooms; Clarke Tucker |
| 43688 (Page 182 of MP-162) | 10/6/16 8:13 | WP - Attorney Work Product; AC - Attorney Client | Confidential communication between attorneys for the purpose of discussing and providing legal advice with respect to interest rate. | RE: Mezz Loan | William Li | Daniel J. Beck | M Rubin; Tim Grooms; Clarke Tucker |
| 42728 (Page 187 of MP-162) | 10/7/16 11:57 | WP - Attorney Work Product | Confidential communication between attorneys with respect to revised draft Indemnity and Guaranty Agreement. | Revised Guaranty | Daniel J. Beck | M Rubin | William Li; Tim Grooms; Clarke Tucker |
| 42980 (Page 188 of MP-162) | 10/7/16 16:48 | WP - Attorney Work Product | Confidential communication between attorneys with respect to | Re: CW-Regions Bank Center Draft Loan Documents | Tim Grooms | M Rubin | William Li; Daniel J. Beck |

| ID | DATE | PRIV BASIS | PRIV DESCR | TITLE | SENT FROM | SENT TO | CC |
|---|---|---|---|---|---|---|---|
| | | | revisions to draft guaranty. | and Open Items List | | | |
| 41727 *(Page 188 of MP-162)* | 10/7/16 17:03 | AC - Attorney Client | Confidential communication between attorney and client with respect to amount of guaranty fee. | Re: Borrower's Signature Packet [CW] - Regions Bank Center | Rett Tucker | M Rubin | William Li; Karen Correale; Jimmy Moses; Chris Moses; Tim Grooms; Daniel J. Beck; Clarke Tucker |
| 42362 *(Page 189 of MP-162)* | 10/10/16 19:36 | WP - Attorney Work Product | Confidential communication between attorneys with respect to officers' certificates for Calmwater loan closing. | RE: Revised Officers' Certificates - 400 Capitol | Dean, Andrew M. | Daniel J. Beck; William Li | Knight, John H.; Kaufman, Lee E.; M Rubin |

Counsel is available if the Court has any questions or concerns.

Respectfully submitted,

*/s/ Christopher P. Simon*

Christopher P. Simon (No. 3697)

CPS: ka

cc:    All parties (via EC/CMF)
       File Copy